IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANDREA LEAH HECKEL,

    Plaintiff,

v.     1:15-cv-00453-LF

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

    Defendant.

## MEMORANDUM ORDER AND OPINION

THIS MATTER comes before the Court on plaintiff Andrea Leah Heckel's Motion to Reverse and Remand (Doc. 22), which was fully briefed May 25, 2016. The parties consented to my entering final judgment in this case. Docs. 8, 10. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the Administrative Law Judge ("ALJ") failed to apply the correct legal standards in weighing the opinions of Carol Capitano, a treating nurse specialist, and Dr. Donald Gucker, a consulting psychologist. I therefore GRANT Ms. Heckel's motion and remand this case to the Commissioner for proceedings consistent with this opinion.

### I.    Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue,* 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's

---

[1] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart,* 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley,* 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart,* 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.     Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61.  If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience.  *Id.*

### III.    Background and Procedural History

Ms. Heckel was born in 1976, completed one year of college, and worked in finance-related jobs from the mid-1990s until her alleged disability onset date in 2009.  AR 126, 133, 29, 170.[3]  Ms. Heckel filed applications for disability insurance benefits and supplemental security income on August 10, 2010—alleging disability since November 4, 2009 due to bipolar/manic depressive disorder, post-traumatic stress disorder ("PTSD"), anxiety disorder, borderline personality disorder, agoraphobia, multiple suicide attempts, irritable bowel

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Documents 15-1 through 15-31 comprise the sealed Administrative Record ("AR").  When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than the CM/ECF document number and page.

syndrome/inflammatory bowel disease/Crohn's disease. AR 126–32, 133–35, 168. The Social Security Administration ("SSA") denied her claims initially on January 5, 2011. AR 62–65. The SSA denied her claims on reconsideration on May 19, 2011. AR 72–77. Ms. Heckel requested a hearing before an ALJ. AR 79–82. On March 20, 2012, ALJ Michelle K. Lindsay held a hearing. AR 11–22. ALJ Lindsay issued her unfavorable decision on June 1, 2012. AR 8–10, 22. Ms. Heckel requested review by the Appeals Council, which denied the request. AR 1–7. Ms. Heckel filed her first appeal to this Court on April 17, 2013. *See Heckel v. Social Security Administration*, No. 13-cv-364-WPL, Doc. 1. The Honorable William P. Lynch remanded Ms. Heckel's case on February 7, 2014 based on the ALJ's failure to assign weight to, or address all of the limitations noted in, the opinion of Dr. Shari Spies, a consulting psychologist. *Id.*, Doc. 23 at 19–22.

On remand, the Appeals Council remanded the case to an ALJ for a new hearing. AR 508–10, 387.[4] ALJ Ann Farris held a hearing on January 6, 2015. AR 414–50. ALJ Farris issued her unfavorable decision on March 6, 2015. AR 384–413.

At step one, the ALJ found that Ms. Heckel had not engaged in substantial, gainful activity since November 4, 2009. AR 391. Because Ms. Heckel had not engaged in substantial gainful activity for at least twelve months, the ALJ proceeded to step two. AR 391–94. At step two, the ALJ found that Ms. Heckel suffered from the following severe impairments: major depressive disorder, anxiety disorder, borderline personality disorder, and substance abuse disorder. AR 391. At step three, the ALJ found that none of Ms. Heckel's impairments, alone or in combination, met or medically equaled a Listing. AR 394–96. Because the ALJ found that

---

[4] On March 6, 2013, while Ms. Heckel's first appeal was pending in this Court, Ms. Heckel filed subsequent claims for disability insurance benefits and supplemental security income. AR 510. On remand, the Appeals Council instructed the ALJ to consolidate the claims. *Id.*

none of the impairments met a Listing, the ALJ assessed Ms. Heckel's RFC. AR 396–403. The ALJ found that:

> [C]laimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to simple work related decisions with few work place changes. She cannot interact with the public and should have only occasional and superficial interaction with co-workers.

AR 396.

At step four, the ALJ concluded that Ms. Heckel was unable to perform any of her past relevant work as an accounting clerk, bookkeeper, assistant controller, or in human resources. AR 403. The ALJ found Ms. Heckel was not disabled at step five, concluding that she still could perform jobs that exist in significant numbers in the national economy, such as an addresser, laundry folder, and "day worker." AR 404–05. Because this Court previously remanded Ms. Heckel's case, Ms. Heckel was not required to seek Appeals Council review again, and the ALJ's decision stands as the final decision of the Commissioner. *See* 20 C.F.R. § 404.984(a). Ms. Heckel timely appealed to this Court on June 1, 2015.[5] Doc. 1.

### IV. Ms. Heckel's Claims

Ms. Heckel raises several arguments for reversing and remanding this case: (1) the ALJ failed to either incorporate, or explain why she chose not to incorporate, limitations noted in the opinions of treating nurse specialist Carol Capitano, and state agency psychological consultant Dr. Donald Gucker; (2) the ALJ failed to properly consider opinion evidence from her treating psychotherapist, Madeleine Brady; (3) the ALJ failed to provide the legal analysis necessary at step five to determine whether enough jobs exist to constitute a "significant number" of jobs; and (4) the ALJ's findings at step five are not supported by substantial evidence. Because I remand

---

[5] If the claimant does not file exceptions and the Appeals Council does not assume jurisdiction of the case, the ALJ's decision becomes final 61 days after it is issued. 20 C.F.R. § 404.984 (b)–(d); AR 385. The claimant then has 60 days to file an appeal to this Court. 20 C.F.R. § 404.981.

based on the ALJ's failure to adequately address the limitations noted in the opinions of Clinical Nurse Specialist ("CNS")[6] Capitano and Dr. Gucker, I do not address the other alleged errors, which "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

V.   **Analysis**

   A. <u>**The ALJ failed to either incorporate, or explain why she rejected, limitations noted in the medical reports of treating nurse specialist Carol Capitano and state agency consultant Dr. Donald Gucker.**</u>

Ms. Heckel argues that the ALJ committed legal error by failing to incorporate several moderate or marked limitations assessed by CNS Carol Capitano and Dr. Donald Gucker into her RFC, without explanation. Doc. 22 at 20–23. The Commissioner argues that the ALJ did not err because she gave "valid reasons" for finding Ms. Heckel less restricted than CNS Capitano opined, and because her reliance on Dr. Gucker's Section III findings excused her from addressing the moderate limitations noted in his Section I findings. Doc. 25 at 7–9.

Although an ALJ need not discuss every piece of evidence, she is required to discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). Specifically, when assessing a plaintiff's RFC, an ALJ must explain what weight is assigned to each opinion and why. SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7. "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific]

---

[6] A Clinical Nurse Specialists (CNS) is a an Advanced Practice Registered Nurse, or a licensed registered nurse who has graduate preparation (Master's or Doctorate) in nursing as a Clinical Nurse Specialist. *National Ass'n of Clinical Nurse Specialists*, www.nacns.org/docs/APRN-Factsheet.pdf, last visited September 19, 2016.

6

functional capacity" because "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted)); *see also Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) ("exact correspondence between a medical opinion and the mental RFC is not required"). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). An ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Ultimately, an ALJ is required to weigh medical source opinions and to provide "appropriate explanations for accepting or rejecting such opinions." SSR 96-5p, 1996 WL 374183, at *5; *see also Keyes-Zachary*, 695 F.3d at 1161 (same) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)).

In 2007, the Tenth Circuit Court of Appeals decided two cases that control here. First, in *Haga*, the court held that an ALJ erred in failing to explain why he adopted some of a consultative examiner's ("CE") restrictions but rejected others. 482 F.3d at 1208. "[T]he ALJ did not state that any evidence conflicted with [the CE's] opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of [the CE's] restrictions but not others." *Id.* The court remanded the case "so that the ALJ [could] explain the evidentiary support for his RFC determination." *Id.* Later in 2007, the Tenth Circuit expressly applied *Haga* and its reasoning to the opinions of nonexamining physicians in *Frantz v. Astrue*, 509 F.3d 1299, 1302−03 (10th Cir. 2007).

7

### 1. **CNS Capitano**

Ms. Heckel argues that the ALJ engaged in impermissible picking and choosing by adopting some limitations noted by CNS Capitano, while rejecting others without explanation. Doc. 22 at 22–23; Doc. 26 at 6–7. The Commissioner counters that the ALJ did not err in giving CNS Capitano's opinion "moderate weight" while only addressing some of the noted limitations. Doc. 25 at 7. The Commissioner argues that the ALJ considered "valid factors" in finding that Ms. Heckel was not as limited as CNS Capitano opined. *Id.*[7]

In her December 16, 2014 opinion, CNS Capitano opined that Ms. Heckel had the following limitations:

- Moderate limitation in remembering locations and work-like procedures;
- Marked limitation in understanding and remembering very short and simple instructions;
- Marked limitation in understanding and remembering detailed instructions;
- Marked limitation in carrying out very short and simple instructions;
- Marked limitation in carrying out detailed instructions;
- Moderate to marked limitation in maintaining attention and concentration for extended periods of time (i.e. 2-hour segments);
- Moderate limitation in performing activities within a schedule, maintaining regular attendance and being punctual within customary tolerance;
- Marked limitation in sustaining an ordinary routine without special supervision;
- Marked limitation in working in coordination with/or proximity to others without being distracted by them;
- Marked limitation in making simple work-related decisions;
- Marked limitation in completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without unreasonable number and length of rest periods;

---

[7] The Commissioner also offers several post hoc rationalizations: "While Dr. Capitano said that Plaintiff had marked limitations in handling even simple instructions (Tr. 938-39), the state agency non-examining psychologists said that Plaintiff responded to treatment (Tr. 312, 368), and Plaintiff was able to clean rooms in exchange for room and board and participate in church activities (Tr. 936, 994)." Doc. 25 at 7–8. This Court cannot rely on explanations not provided by the ALJ. *See Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) ("Affirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process.") Even if the Court credited these explanations, they do not explain why the ALJ rejected numerous limitations found by CNS Capitano.

8

- Marked limitation in interacting appropriately with the general public;
- Moderate limitation in asking simple questions or requesting assistance;
- Marked limitation in accepting instructions and responding appropriately to criticism from supervisors;
- Marked limitation in getting along with coworkers or peers without distracting them or exhibiting behavioral extremes;
- Moderate limitation in maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness;
- Marked limitation in responding appropriately to changes in the workplace;
- Moderate limitation in being aware of normal hazards and taking adequate precautions;
- Moderate limitation in traveling in unfamiliar places or using public transportation;
- Moderate limitation in setting realistic goals or making plans independently of others.

AR 940-1.

The ALJ's assessment of CNS Capitano's medical source statement is as follows:

> I give her opinion moderate weight because she is an examining and treating source, however, her treatment notes and the claimant's reported activities do not support this level of limitation. Instead, the treatment notes indicate that the claimant was responding to medication management and improving with therapy. Further, the claimant's symptoms increased when she faced situational stressors. The claimant's limitations with respect to social functioning and concentration, persistence, and pace have been accommodated with the assigned residual functional capacity which limits her to simple work with no contact with the general public and little contact with supervisors or co-workers.

AR 403.

CNS Capitano is considered an "other source" under the regulations, despite her advanced degree. *See* SSR 06-03p (Aug. 9, 2006), 2006 WL 2329939, at *5.[8]  Opinions from "other sources" "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id.* at *3. Opinions from "other sources" are weighed using the same factors for weighing opinions from

---

[8] It is not clear that the ALJ treated CNS Capitano's opinion as an "other source" opinion. The ALJ repeatedly referred to CNS Capitano as "Dr.," AR 403, although elsewhere she acknowledged that she was an Advanced Practice Registered Nurse (APRN), AR 387. CNS Capitano holds a Ph.D., AR 941, so the title "Dr." is correct, but she is not a physician or psychologist, and therefore not an "acceptable medical source" under the regulations. SSR 06-03p, 2006 WL 2329939, at *1.

acceptable medical sources.  *Id.* at *4–*5; *Frantz*, 509 F.3d at 1302.[9]  The ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  SSR 06-03p, 2006 WL 2329939, at *6.

The parties disagree about how much the ALJ was required to discuss CNS Capitano's "other source" opinion.  The Commissioner argues that the ALJ is not required to address CNS Capitano's limitations "line-by-line," arguing that for a "nonacceptable medical source . . . the ALJ's decision is sufficient if it permits us to follow the adjudicator's reasoning."  Doc. 25 at 8 (quoting *Keyes-Zachary*, 695 F.3d at 1164).  The Commissioner also cites *Block v. Astrue*, 506 F. App'x 764, 771 (10th Cir. 2012) (unpublished) ("[T]he ALJ explained the weight he gave the mental medical source statements: 'little.'  And the ALJ's discussion of the evidence permits us to follow his reasoning.").  Doc. 25 at 8.  The Court finds these cases distinguishable.  Unlike the ALJ in this case, the ALJs in *Keyes-Zachary* and in *Block* did not pick and choose from limitations noted in the "other source" opinions.  In each case, the ALJ rejected the "other source" opinion outright, and the Court found no error because the "ALJ's discussion of the evidence permit[ted the Court] to follow his reasoning."  *Block*, 506 F. App'x at 771 (citing *Keyes-Zachary*, 695 F.3d at 1164).

---

[9] Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (citation omitted).

Here, however, the ALJ erred because her discussion of the evidence does not permit the Court to follow her reasoning. In this case, as in *Frantz*, the ALJ "ignored evidence from [a CNS] that would support a finding of disability while highlighting evidence favorable to a finding of nondisability." *Frantz*, 509 F.3d at 1302. And, as in *Haga*, "the ALJ did not state that any evidence conflicted with [the] opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of [the] restrictions but not others." 482 F.3d at 1208. Under *Haga* and *Frantz*, the ALJ was required to either adopt all of the moderate or marked limitations assessed by CNS Capitano, or explain her reasons for not doing so. The ALJ appears to have partially credited the limitations that CNS Capitano noted in Ms. Heckel's ability to carry out detailed instructions, respond appropriately to changes in the workplace, interact with the general public, and get along with coworkers or peers by limiting her to simple work-related decisions, few work place changes, no interaction with the public, and only occasional and superficial interaction with co-workers. AR 396. But the ALJ failed to discuss or discredit any of the other noted limitations.

The Commissioner argues that the ALJ adequately explained why she did not adopt all of the limitations. Doc. 25 at 7. The Court disagrees. The ALJ's general assertion that "treatment notes and the claimant's reported activities do not support this level of limitation" may explain why the ALJ found Ms. Heckel found a lesser degree of limitation than CNS Capitano in the limitations the ALJ did address. But it does not explain why she rejected the other numerous limitations noted by CNS Capitano, or why she adopted some limitations while rejecting others.

The parties do not address each omitted limitation individually. The Court will not do so either, as remand is required given that the ALJ omitted at least two critical limitations from the RFC without adequate discussion.

First, the ALJ failed to include any limitation concerning Ms. Heckel's ability to interact with supervisors in the RFC. The ALJ states in several parts of the opinion that she included such a limitation. *See* AR 399 ("the assigned residual functional capacity . . . restricts her contact with the public and co-workers and supervisors"), AR 403 (the assigned RFC "limits her to . . . little contact with supervisors or co-workers"), AR 403 ("very limited contact with co-workers and supervisors"). However, despite the ALJ's claim that the assigned RFC limited Ms. Heckel to "little contact with supervisors," the ALJ failed to include this limitation in either the RFC or the hypothetical she gave the vocational expert.[10] AR 396, 446. A claimant's ability to interact with supervisors is a work-related mental ability which is critical to all work, and the ALJ must adequately address it in the RFC.[11] The ALJ's failure to address this basic work function in the RFC requires remand.

---

[10] "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (quotation omitted).

[11] "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945." SSR 96-8p, 1996 WL 374184, at *1. This means the ALJ must consider how the claimant's impairments affect her physical abilities, mental abilities, and other abilities. An ALJ must consider all of the following when assessing a claimant's mental abilities:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

Second, the ALJ failed to adequately address Ms. Heckel's limitation in her ability to complete a normal workday and workweek without interruptions, and to perform at a consistent pace without an unreasonable number and length of rest periods. CNS Capitano found that Ms. Heckel had a "marked" limitation in this regard. AR 940. Madeleine Brady also found that Ms. Heckel had a "marked" limitation in this regard. AR 853. Dr. Gucker found that Ms. Heckel had a "moderate" limitation in this area. AR 311. The ALJ did not point to any evidence contradicting the fact that Ms. Heckel has at least a moderate impairment in this area. However, the ALJ failed to discuss why she rejected this limitation. The mental abilities needed for any job include "the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods." Social Security Program Operations Manual System ("POMS") § DI 25020.010, http://policy.ssa.gov/poms.nsf/lnx/0425020010. "These requirements are usually strict." *Id.* Because this ability is a general requirement for all jobs, the ALJ must address this limitation in formulating Ms. Heckel's RFC. *See Bowers v. Astrue*, 271 F. App'x 731, 733–34 (10th Cir. 2008) (unpublished) (noting that a moderate limitation in another ability required for all jobs—the ability to respond appropriately to changes in a routine work setting—could decrease ability to perform simple or unskilled work because it is a general work

---

20 C.F.R. §§ 404.1545(c), 416.945(c); *see also* SSR 96-8p, 1996 WL 374184, at *6 ("Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.") In formulating the RFC, an ALJ must perform a function-by-function assessment of these work-related functions, considering all of the relevant evidence in the case record. SSR 96-8p, 1996 WL 374184, at*2. The Tenth Circuit has held that where a claimant is found to have more than mild mental limitations in work-related functions, the ALJ must "express those impairments 'in terms of work-related functions' or '[w]ork-related mental activities.'" *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2004) (unpublished) (quoting SSR 96-8p, 1996 WL 374184, at *6).

13

requirement). The ALJ failed to adequately address this limitation, and remand is therefore appropriate.

### 2. Dr. Gucker

The ALJ assigned "moderate weight" to the medical source opinion of Dr. Donald Gucker, a state agency psychological consultant who examined Ms. Heckel in 2011. AR 400. In Section I of his January 4, 2011 Mental Residual Function Capacity Assessment ("MRFCA"), Dr. Gucker found that Ms. Heckel had the following limitations:

- Moderate limitation in understanding and remembering detailed instructions;
- Moderate limitation in carrying out detailed instructions;
- Moderate limitation in maintaining attention and concentration for extended periods;
- Moderate limitation in performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances;
- Moderate limitation in working in coordination with or proximity to others without being distracted by them;
- Moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
- Moderate limitation in interacting appropriately with the general public;
- Moderate limitation in accepting instructions and responding appropriately to criticism from supervisors;
- Moderate limitation in getting along with coworkers or peers without distracting them or exhibiting behavioral extremes;
- Moderate limitation in maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness;
- Moderate limitation in responding appropriately to changes in the work setting;
- Moderate limitation in being aware of normal hazards and taking appropriate precautions;
- Moderate limitation in traveling in unfamiliar places or using public transportation;
- Moderate limitation in setting realistic goals or making plans independently of others.

AR 310–11.

In Section III of his MRFCA, Dr. Gucker found that:

it appears that when compliant with medical TX [treatment], RX'ed [prescribed] meds, and when no[t] using illegal substances and ETOH [ethyl alcohol], the Claimant can understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting.

AR 312.

> The ALJ assessed Dr. Gucker's opinion as follows:
>
> In January 2011, State agency psychological consultant Dr. Donald Gucker opined that when compliant with treatment and medication and not using illegal substances, she could understand, remember, and carry out simple instructions; make simple decisions; attend and concentrate for two hours at a time; interact appropriately with coworkers and supervisors; and respond appropriately to changes in a routine work setting (9F/13). In May 2011, State agency psychological consultant Renate Wewerka, PhD, reviewed the record and opined that the claimant's limitations were consistent with the capacity for unskilled work and affirmed the previous assessment (14F/l). I give these opinions moderate weight as they are experienced at reviewing medical records and assigning mental residual functional capacities. However, more recent records have established additional limitations. For this reason, I have further restricted the claimant's interactions with others.

AR 400–01.

Ms. Heckel argues that, because the ALJ relied on Dr. Gucker's assessment, she "was required to incorporate all of the limitations assessed by him or else sufficiently explain her reasons for not doing so." Doc. 22 at 21 (emphasis removed). The only limitations noted by Dr. Gucker that the ALJ included in her RFC were moderate limitations in responding to workplace changes and getting along with coworkers. Doc. 22 at 21. Ms. Heckel argues that the ALJ erred by not addressing the other limitations. *Id.*

The Commissioner responds that the ALJ did not overlook any moderate limitations because the ALJ only was required to account for the limitations noted in Dr. Gucker's Section III findings, not those is Section I. Doc. 25 at 8. The Commissioner cites *Sullivan v. Colvin*, 519 F. App'x 985, 989 (10th Cir. 2013) (unpublished), claiming that it supports the proposition that it is not error for the ALJ to "not mention[] the moderate limitations in performance indicated in Section I of the Mental Residual Functional Capacity form where the ALJ relied on the state agency's ultimate opinion in Section III." Doc. 25 at 9. The Commissioner also cites several out-of-circuit cases as support for this position. *Id.* The Court finds the Commissioner's arguments unpersuasive.

As the Honorable Stephan M. Vidmar thoroughly explained in his recent opinion rejecting nearly identical arguments, the POMS, regulations, and case law require the ALJ to address all Dr. Gucker's findings, not just those in Section III. *See Silva v. Colvin*, No. 15-cv-603 SMV, Doc. 24 at 11–18 (D.N.M., Aug. 25, 2016). Specifically, "findings of fact made by State agency . . . psychological consultants . . . become opinions at the administrative law judge . . . level[] of administrative review . . . and requires administrative law judges . . . to consider and evaluate these opinions when making a decision in a particular case." POMS § DI 24515.013, http://policy.ssa.gov/poms.nsf/lnx/0424515013. Further, "[b]ecause State agency . . . psychological consultants . . . are experts in the Social Security disability programs, the rules in 20 CFR [§§] 404.1527(f) and 416.927(f) require administrative law judges . . . to consider their findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining . . . psychologists. Administrative law judges . . . are not bound by findings made by State agency . . . psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." *Id.* And although ALJs also "must consider and evaluate" a consulting psychologist's Section III RFC, Section I findings are not exempt from this scrutiny. *See id.*

Social Security regulations also require ALJs to "consider findings and other opinions of State agency . . . psychological consultants . . . as opinion evidence . . . ." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). "Evidence" includes "findings . . . made by State agency . . . psychological consultants . . ., and opinions expressed by . . . psychological experts that we consult based on their review of the evidence in your case record." 20 C.F.R. §§ 404.1512(b)(1)(viii), 416.912(b)(1)(viii). Like the POMS, the regulations do not exempt the Section I findings from an ALJ's consideration and evaluation. *See id.*

16

Case law also requires ALJs to consider a psychological consultant's entire MRFCA, not just the Section III findings. The Court has surveyed the cases from the Tenth Circuit that expressly address the distinction between Section I and Section III findings. Two cases, *Smith v. Colvin*, 821 F.3d 1264 (10th Cir. 2016) and *Sullivan v. Colvin*, 519 F. App'x 985 (10th Cir. 2013) (unpublished), arguably could be interpreted in the Commissioner's favor, but the others could not. *Compare Smith*, 821 F.3d at 1269 n.2[12] ("Ms. Smith questions how the [ALJ]'s [RFC] assessment incorporates the moderate limitations indicated by Dr. Frommelt. . . . This is the wrong question. . . . Dr. Frommelt's notations of moderate limitations served only as an aid to her assessment of residual functional capacity. We compare the [ALJ]'s findings to Dr. Frommelt's opinion on residual functional capacity, not her notations of moderate limitations."), *and Sullivan*, 519 F. App'x at 989 (acknowledging the POMS' distinction between Section I and Section III, rejecting the plaintiff's argument that the Section I limitations are "in addition to those in Section III," and finding that the ALJ had relied on the Section III findings and was not required to discuss the Section I findings), *with Nelson v. Colvin*, No. 15-6226, 2016 WL 3865856 (10th Cir. July 12, 2016) (unpublished) (referring to the doctor's Section I findings versus his Section III findings but ultimately deciding that the ALJ's RFC accounted for all of the Section I findings (as opposed to finding that the ALJ was

---

[12] In *Smith*, the court held that the ALJ did not err in failing to repeat moderate nonexertional limitations from a medical opinion because the limitations were incorporated into the RFC. 821 F.3d at 1269. To the extent that *Smith* suggests that an ALJ may ignore a consulting psychologists Section I findings, that suggestion is inconsistent with the Tenth Circuit's earlier decisions in *Haga*, 482 F.3d at 1208 ("ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others"), and *Frantz*, 509 F.3d at 1302–03 ("ALJ erred in accepting some of the moderate limitations in the Mental RFC form completed by Dr. Garnand, a nonexamining physician, but rejecting others without discussion"). However, one panel of the court cannot overrule another, *United States v. Brown*, 400 F.3d 1242, 1256 (10th Cir. 2005), and earlier panel decisions control over later ones, *Storagecraft Tech. Corp. v. Kirby*, 744 F.3d 1183, 1191 n.2 (10th Cir. 2014).

17

free to disregard the Section I findings entirely)), *Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir. 2015) (unpublished) (finding that the POMS' distinction between the purposes of Section I and Section III "does not mean, of course, that the ALJ should turn a blind eye to any moderate limitations enumerated in Section I that are not adequately explained in Section III"), *Fulton v. Colvin*, 631 F. App'x 498, 502 (10th Cir. 2015) (unpublished) ("Where a psychologist's Section III narrative does not contradict any Section I limitations and describes the effect each Section I limitation would have on the claimant's mental RFC, the ALJ may properly look to only the Section III narrative as the psychologist's opinion regarding mental RFC.  The ALJ did so here . . . .  And we do not see any contradiction between Sections I and III of Dr. Kendall's [report] or any failure to describe in Section III the effects of any Section I limitations on [the plaintiff]'s capacity for work.") (internal citations omitted), *Carver v. Colvin*, 600 F. App'x 616, 618–19 (10th Cir. 2015) (unpublished) (acknowledging the POMS' distinction between Section I and Section III, but holding that ALJ may not "turn a blind eye to moderate Section I limitations," and ultimately finding that the Section I limitations at issue were accounted for in the Section III findings), *and Jaramillo v. Colvin*, 576 F. App'x 870, 874 (10th Cir. 2014) (unpublished) (acknowledging the POMS' distinction between Section I and Section III, analyzing whether the ALJ's RFC (presented to the VE in a hypothetical question) "adequately account[ed]" for the Section I findings, and ultimately finding that the Section I limitations at issue were accounted for in the ALJ's RFC).  While some of these cases suggest that an ALJ may rely exclusively on the Section III findings, they do so with an important caveat:  the Section III findings must adequately account for the Section I findings.  The case law therefore requires ALJs to consider all of the findings made in medical source opinions, including the Section I findings.

Thus, under *Haga*, 482 F.3d at 1208, and *Frantz*, 509 F.3d at 1302–03, the ALJ has a duty to explain why she adopted some of Dr. Gucker's limitations while rejecting others. The Court must determine whether the ALJ adequately accounted for the limitations noted by Dr. Gucker in the RFC assessment. *See Carver*, 600 F. App'x at 619 ("if a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding"). If not, the Court must determine whether the ALJ adequately explained why she rejected the missing limitations.

The Commissioner argues that, even if the ALJ failed to include some limitations, this Court should find this harmless error because "[t]he ALJ's ultimate findings accounted for the doctors' opinions." Doc. 25 at 9 n.2. The Court disagrees. In this case, Dr. Gucker's Section III summary failed to sufficiently account for the moderate limitations assessed in Section I. As discussed above, the ALJ failed to sufficiently account for Ms. Heckel's limitations in her ability to get along with supervisors, in her ability to complete a normal workday and workweek without interruptions, and to perform at a consistent pace without an unreasonable number and length of rest periods. Under *Haga* and *Frantz*, the ALJ must either adopt these moderate limitations, or explain why she rejected them.

## VI.   Conclusion

The ALJ erred in failing to incorporate several moderate or marked limitations assessed by CNS Capitano and Dr. Gucker into Ms. Heckel's RFC, without explanation. I remand so that the ALJ can explain the evidentiary basis for her RFC determination and her reasons for rejecting portions of the uncontroverted evidence.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 22) is GRANTED.

**IT IS FURTHER ORDERED** that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent